**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| NDABA, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 09-0117 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 4, 13 |
| | : | | |
| BARACK H. OBAMA[1] *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

**Granting the Defendants' Motion to Dismiss;**
**Denying as Moot the Plaintiff's Motion for Summary Judgment**

## I. INTRODUCTION

This matter comes before the court on the defendants' motion to dismiss. The *pro se* plaintiff, an individual "who is opposed to [the] U.S. government supporting, providing, endorsing and using the experimental HPV[2] vaccine in [the] Washington DC public school system on female children[]," brought suit seeking to invalidate the use of taxpayer funds to support the distribution of the HPV vaccine to female public school students in the District of Columbia. The defendants have moved to dismiss the complaint for lack of standing. Because the court concludes that the plaintiff lacks standing, it grants the defendants' motion to dismiss.

---

[1]    The complaint, filed on January 16, 2009, names then-President George W. Bush as a defendant in his official capacity. *See* Compl. ¶ 9. His successor, President Barack H. Obama, is automatically substituted as the defendant in his official capacity pursuant to Federal Rule of Civil Procedure 25(d).

[2]    HPV, short for human papillomavirus, is a sexually transmitted virus.

## II. FACTUAL & PROCEDURAL BACKGROUND

The plaintiff commenced this suit on January 16, 2009, claiming that the defendants are responsible for the distribution of HPV vaccines to female schoolchildren in the District of Columbia, the majority of whom are African-American. *See generally* Compl. The plaintiff asserts that the defendants' conduct violates the Due Process and Equal Protection clauses of the Fourteenth Amendment. *See generally id.* On June 15, 2009, the defendants filed a motion to dismiss for lack of standing, *see generally* Defs.' Mot., which the plaintiff opposed on July 29, 2009, *see generally* Pl.'s Opp'n. The defendants filed a reply in support of their motion to dismiss on August 17, 2009. *See* Defs.' Reply. The court turns now to the applicable legal standard and the parties' arguments.

## III. ANALYSIS

### A. Legal Standard for Standing

Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies. U.S. CONST. art. III, § 2, cl. 1. These prerequisites reflect the "common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). Consequently, "a showing of standing is an essential and unchanging predicate to any exercise of a court's jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Put slightly differently, "Article III standing must be resolved as threshold matter." *Raytheon Co. v. Ashborn Agencies, Ltd.*, 372 F.3d 451, 453 (D.C. Cir. 2004) (citing *Steel Co.*, 523 U.S. at 96-102).

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing. *Lujan*, 504 U.S. at 561; *Steel Co.*, 523 U.S. at 104; *City of Waukesha v. Envtl. Prot. Agency*, 320 F.3d 228, 233 (D.C. Cir. 2003) (per curiam). The extent of the plaintiff's burden varies according to the procedural posture of the case. *Sierra Club v. Envtl. Prot. Agency*, 292 F.3d 895, 898-99 (D.C. Cir. 2002). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct will suffice. *Id.* On a motion for summary judgment, however, the "plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken to be true." *Id.* at 899 (citing Fed. R. Civ. P. 56); *accord Fla. Audubon*, 94 F.3d at 666.

To demonstrate standing, a plaintiff must satisfy a three-pronged test. *Sierra Club*, 292 F.3d at 898 (citing *Lujan*, 504 U.S. at 560). First, the plaintiff must have suffered an injury in fact, defined as a harm that is concrete and actual or imminent, not conjectural or hypothetical. *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C. Cir. 1999) (citing *Steel Co.*, 523 U.S. at 103). Second, the injury must be fairly traceable to the governmental conduct alleged. *Id.* Finally, it must be likely that the requested relief will redress the alleged injury. *Id.* This Circuit has made clear that no standing exists if the plaintiff's allegations are "purely speculative[, which is] the ultimate label for injuries too implausible to support standing." *Tozzi v. Dep't of Health & Human Servs.*, 271 F.3d 301, 307 (D.C. Cir. 2001). Nor does standing exist where the court "would have to accept a number of very speculative inferences and assumptions in any endeavor to connect the alleged injury with [the challenged conduct]." *Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980).

### B.  The Court Grants the Defendants' Motion to Dismiss

The defendants argue that the plaintiff lacks standing because he has "failed to allege that [he] has suffered, or imminently will suffer, a personal injury as a result of the distribution of an HPV vaccine in Washington, D.C. public schools." Defs.' Mot. at 4. At most, the defendants contend, the plaintiff has asserted claims on behalf of third parties – female schoolchildren in the District of Columbia – who are not before the court. *Id.* Finally, the defendants assert that the plaintiff has failed to adequately assert standing as a taxpayer. *Id.* at 5.

In his opposition, the plaintiff asserts for the first time that he "brings this action as a class action . . . on behalf of his Black self and a Class consisting of members of the Black race." Pl.'s Opp'n at 2. He suggests that he has standing to challenge, on behalf of "members of the Black race," what he describes as the experimental use of the HPV vaccine in District of Columbia public schools because "Black female children . . . represent over 80 percent" of the female public school students in the District. *Id.* at 6. The plaintiff also enumerates the reasons for which he opposes the use of the HPV vaccine. *Id.* at 6-7. Finally, the plaintiff emphasizes that as a *pro se* party, he is entitled to considerably more leeway than parties represented by counsel. *Id.* at 4-5.

The plaintiff is correct that the court must hold submissions drafted by *pro se* plaintiffs "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Even viewing the complaint in this light, however, it is clear that the plaintiff lacks standing to bring these claims. To survive the defendants' motion to dismiss, the plaintiff must satisfy, *inter alia*, the first element of the "irreducible constitutional minimum of standing" by alleging that he has "suffered an 'injury in fact' – an invasion of a legally protected

interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations omitted). Nothing in the plaintiff's complaint or any of his other submissions suggests that the plaintiff satisfies this standard. Rather than alleging that he personally has incurred harm as a result of the distribution of the HPV vaccine to female schoolchildren in the District of Columbia, the plaintiff merely states that he opposes that practice. *See, e.g.*, Compl. ¶ 5 (stating that the plaintiff "is opposed to [the] U.S. government supporting, providing, endorsing and using the experimental HPV vaccine in [the] Washington DC public school system"); *id.* ¶ 6 (stating that the plaintiff's "purpose is to protect life"); *id.* ¶ 7 (stating that "[t]he plaintiff is opposed to the use of congressional taxpayer appropriations to advance and promote deprivations of life without due process of law and equal protection of the laws").

The fact that the plaintiff brings this suit as a District of Columbia taxpayer does not alter this result. It is well-established that plaintiffs lack standing to assert claims in which the purported injury is based only on "the asserted effect of the allegedly illegal activity on public revenues, to which the taxpayer contributes," because in such cases the injury "is not 'concrete and particularized,'" but instead a grievance the taxpayer 'suffers in some indefinite way in common with people generally.' In addition, the injury is not 'actual or imminent,' but instead 'conjectural or hypothetical.'" *DaimerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006) (internal citations omitted). Nor does the fact that the plaintiff seeks to bring this suit as a class action alter the result, for plaintiffs seeking to bring class action lawsuits "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v.*

*Seldin*, 422 U.S. 490, 502 (1975).  In sum, because the plaintiff has failed to show that he has suffered or will imminently suffer any injury in fact in connection with the defendants' purported conduct, he lacks standing to assert these claims.


## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendants' motion to dismiss.[3]  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 23rd day of March, 2010.


RICARDO M. URBINA
United States District Judge

---

[3]      As a result, the court denies as moot the plaintiff's motion for summary judgment.